# Holland & Knight

50 North Laura Street, Suite 3900 | Jacksonville, FL 32202 | T 904.353.2000 | F 904.358.1872
Holland & Knight LLP | www.hklaw.com

Daniel Mahfood
+1 (904) 798 5461
daniel.mahfood@hklaw.com

July 1, 2024

<u>*Via Electronic Filing*</u>

David J. Smith, Clerk of Court
U.S. COURT OF APPEALS FOR THE 11TH CIRCUIT
56 Forsyth Street, N.W.
Atlanta, GA 30303

> Re: *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.* (Appeal No. 22-11222) – Supplemental Brief Regarding Cambridge Christian School's Participation in FHSAA Football

Dear Mr. Smith,

This letter responds to the Court's order of June 11, 2024 (Appeal Doc. 88) requesting supplemental briefing on the questions below and the supplemental brief filed by Cambridge Christian School ("CCS") on June 21, 2024 (Appeal Doc. 89).

**1. Is it true that Cambridge Christian School's high school football team will not compete in the FHSAA for the 2024–25 and 2025–26 school years?**

As things currently stand, CCS will not compete in FHSAA football for the 2024–25 or 2025–26 school years. However, it would be possible for CCS to reverse this decision, as discussed below.

Atlanta | Austin | Birmingham | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale
Houston | Jacksonville | Los Angeles | Miami | Nashville | Newport Beach | New York | Orlando | Philadelphia
Portland | Richmond | San Francisco | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

**2. How and when was that decision made and by which party?**

This decision was made by CCS. The FHSAA therefore cannot address CCS's timing or reasoning other than by reference to concerns CCS expressed about its inability to safely compete with schools in its district. (*See* Appeal Doc. 89-2 at 14.)

**3. If, in the future, Cambridge Christian School's football program seeks to return to football competition in the FHSAA, what is the procedure for its return? Would the FHSAA have the authority to deny Cambridge Christian School permission to return?**

The procedures for returning to FHSAA football competition are set out in the FHSAA handbook for the 2023–24 school year (the "FHSAA Handbook").[1] Assuming CCS continues to meet other eligibility criteria, CCS could return to football competition by formally requesting to be added within the first two weeks of the football season, provided that CCS is able to schedule the required number of district contests. (FHSAA Handbook at 59, § 10.2.1; *see also* Appeal Doc. 89-2 at 19.)

The FHSAA has the authority to determine its membership both by school and by sport. (FHSAA Handbook at 11–13, § 3.9.) However, assuming continued compliance with all requirements set forth in the FHSAA Handbook—e.g., paying membership dues, scheduling required district contests, requesting to be added no later than two weeks after the beginning of football season, etc.—the FHSAA would not deny a request by CCS to return to FHSAA football competition.

---

[1] A copy of the FHSAA Handbook is available at https://fhsaa.com/documents/2023/7/13//2324_handbook.pdf?id=4394 [https://perma.cc/P47Q-VPVY].

4. **What effect, if any, does leaving the FHSAA's football competition have on Cambridge Christian School's standing to bring the claims in this lawsuit?**

Because standing is determined as of the time a complaint is filed, CCS's post-filing withdrawal from FHSAA football competition does not affect its *standing*. *See, e.g.*, *Schultz v. Alabama*, 42 F.4th 1298, 1319 (11th Cir. 2022). Rather, these developments affect *mootness*, as discussed below. (*See* Resp. to Question 5, *infra*.)

The FHSAA maintains, however, that CCS lacked standing to seek declaratory or injunctive relief at the time the Complaint was filed because, at that time, CCS could not show that its alleged injury—i.e., denial of access to the PA system to conduct a pre-game prayer at an FHSAA football championship final (a "Football Final")[2]—was "'certainly impending.'" (Appeal Doc. 72 at 4–7 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).) That CCS has not only failed to reach another Football Final in the years since the Complaint was filed but has now withdrawn from FHSAA football competition entirely only underscores that its participation in another Football Final depended on a "'speculative chain of possibilities'" and was not bound to occur "'within some fixed period of time in the future' that [was] 'not too far off.'" (*Id.* (quoting *Clapper*, 568 U.S. at 412; *Bloedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011)).)

---

[2] CCS's reference to sports other than football does not change the analysis above for the reasons discussed in response to Question 5 below.

Importantly, CCS could not avoid the consequences of its initial lack of standing by showing that its dispute is "capable of repetition but evading review" (*see* Appeal Doc. 89-1 at 14) because that rule applies only to mootness, not standing. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). Nor does the possibility that no party would have standing to seek the relief CCS requested relieve CCS from proving standing. *See, e.g.*, *Food & Drug Admin. v. All. for Hippocratic Med.*, No. 23-235, 2024 WL 2964140, at *14 (U.S. June 13, 2024).

5. **What effect, if any, does Cambridge Christian School's leaving the FHSAA's football competition have on the question of whether the request for declaratory relief is moot? On the question of whether the request for injunctive relief is moot? On the question of whether nominal damages could be awarded is moot?**

The FHSAA first addresses CCS's requests for declaratory and injunctive relief (*see* Part A, *infra*) and then addresses nominal damages (*see* Part B, *infra*.)

    A.    **Declaratory & Injunctive Relief**

        **1. CCS's withdrawal from FHSAA football further moots its claims for declaratory and injunctive relief.**

CCS's decision to withdraw from FHSAA football competition provides an additional reason that its requests for declaratory and injunctive relief are moot. To establish standing for both kinds of relief, a party must show a "real and immediate threat of future harm." *See, e.g.*, *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). Absent exceptions that do not apply here, if a party loses standing for certain claims after the case is filed, the claims become moot. *See Strickland v. Alexander*,

772 F.3d 876, 887 (11th Cir. 2014). As explained above and elsewhere, CCS lacked standing for declaratory or injunctive relief at the outset of the case because the threat of future harm it alleged was denial of an opportunity to conduct a pre-game prayer over the PA system at a Football Final, and CCS's future participation in a Football Final was not "certainly impending." (*See* Appeal Doc. 72-1 at 4–7.) Moreover, even if CCS initially had standing to pursue declaratory and injunctive relief, these claims became moot upon the enactment of Section 1006.185, Florida Statutes, which gives all schools a right to access the PA system before FHSAA championship events in all sports, including football.[3] (*Id.* at 7–8.)

However, even if CCS did not lack standing for its claims for declaratory and injunctive relief, and even if these claims had not been mooted by Section 1006.185, they would be mooted by CCS's decision to withdraw from FHSAA football. This decision adds yet another link to the "speculative chain of possibilities" that CCS

---

[3] The voluntary-cessation exception does not apply because the change in policy was not voluntary but was, instead, imposed by the Florida Legislature. (Appeal Doc. 72-1 at 7.) Therefore, the FHSAA is not "free to return to [its] old ways." *Toriano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d at 1282–83 (11th Cir. 2004) (internal quotation marks omitted). Moreover, as a state actor, the FHSAA is entitled to a "presumption that the objectionable behavior will *not* reoccur," and the voluntary-cessation exception will apply only if there is "some reasonable basis to believe that the policy will be reinstated." *Id.* at 1283, 1285. Here, there is no evidence the FHSAA would not follow Section 1006.185. In fact, the FHSAA followed Section 1006.185 throughout the 2023–24 school year, and schools used the access to the PA system conferred by the statute for prayer on multiple occasions. The FHSAA can submit declarations attesting to the foregoing if the Court desires.

must rely on to show a threat of future harm. *Clapper*, 568 U.S. at 412. Now, in addition to showing it will imminently (i.e., "within some fixed period of time" that is "not too far off") win enough games to make another Football Final[4] (for only the second time in its history), that another Christian school will do the same,[5] and that the FHSAA will violate Section 1006.185 at that game, CCS must also show it will imminently rebuild and return to FHSAA football competition. *Bloedorn*, 631 F.3d at 1228. CCS cannot do so. The best it can offer is that it "intends and expects" to return to FHSAA football "as soon as possible, preferably in the 2025 fall season." (Appeal Doc. 89-2 at 6, ¶ 17.) CCS falls short showing that this will occur within any fixed period of time and, to the contrary, seems to acknowledge the unpredictable "ebbs and flows" of a high school sports team's competitiveness. (*Id.* at 5, ¶ 13.) CCS asserts that both "periods of playoff success" and "streaks of losing records" are possible, but it does not give any particular reason to expect it will enjoy the

---

[4] CCS refers to the possibility of again playing in the "FHSAA State Series tournament" (Appeal Doc. 89-1 at 13), but there is no allegation that CCS has ever been denied access to the PA system at a game other than a Football Final nor any indication it would ever be denied such access in the future. (*See* Doc. 8 at 7, ¶ 33.)

[5] As this case progressed, CCS amended its alleged "tradition of pre-game prayer over the loudspeaker . . . at away games when possible" (Doc. 8 at 5, ¶ 17) to pre-game prayer at away games "between two Christian schools . . . each with a long tradition of pregame prayer over the PA" (Doc. 151 at 28). An injunction or declaration properly tailored to this dispute would therefore apply only in Football Finals between two Christian schools with long traditions of pregame prayer over a PA system. *See Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2013).

former rather than the latter within any fixed time period. (*Id.*) CCS is thus relying on a "some day intention" to return to Football Final without "'any specification of when the some day will be.'" *Elend*, 471 F.3d at 1209 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). This is clearly insufficient. *Id.*

### 2. The capable-of-repetition exception does not apply.

CCS's appeal to the capable-of-repetition exception (*see* Appeal Doc. 89-1 at 14), which "applies only in exceptional situations," *City of Los Angeles v. Lyons*, 461 U.S. 95, 110 (1983), fails for at least two reasons. First, the exception applies to mootness *caused by* the dispute's short duration; it isn't a blanket exception that immunizes short-term disputes from being found moot for other reasons. So, for example, if a disabled person were temporarily confined in a segregated environment in violation of the Americans with Disabilities Act, the capable-of-repetition exception could prevent her case from becoming moot if she were transferred to a community-based setting while her lawsuit was pending, but it would not prevent her case from becoming moot if she died and, for that independent reason, could no longer obtain meaningful relief. *See generally Olmstead v. L.C.*, 527 U.S. 581 (1999). Indeed, when the Supreme Court first articulated the capable-of-repetition exception, it explained that judicial "consideration[ ] ought not to be . . . *defeated*[ ] *by* short term orders, capable of repetition, yet evading review." *So. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911) (emphasis added).

Here, review would not be "defeated[ ] by" the short-term nature of the dispute. Rather, it would be defeated by (a) the enactment of Section 1006.185 and (b) CCS's decision to withdraw from FHSAA football competition.[6] *Id.* The capable-of-repetition exception does not excuse these kinds of mootness.

Second, for the exception to apply, the plaintiff must show "a reasonable expectation that the same complaining party would be subjected to the same action." *Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004); *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982) ("[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur . . . ."). For the reasons above—i.e., the speculative nature of CCS's future participation in a Football Final, the effect of Section 1006.185, and, now, CCS's indefinite withdrawal from FHSAA football—no one can reasonably *expect* CCS will be subjected to the same action. Even before CCS entered its "rebuilding phase," history showed this possibility was remote since CCS had reached a Football Final only once in 32 years. (*See* Appeal Doc. 89-1 at 1.) The possibility became even more remote when Section 1006.185 was passed because, now, the Court must further speculate that the FHSAA would

---

[6] If the transitory nature of the parties' dispute defeats CCS's claims, it is due to lack of *standing*, not *mootness*, because, by the time CCS filed its complaint, the immediate dispute had already ended, and CCS no longer faced a "certainly impending" threat of alleged future harm. As noted above, however, the capable-of-repetition exception does not apply to standing. *See, e.g.*, *Strickland*, 772 F.3d at 887 ("[E]xceptions to the mootness doctrine exist, while they do not for standing.").

violate the statute, contrary to its stated position. (*See* Appeal Doc. 86 at 2–11.) And CCS now relies on still more speculation that its "rebuilding" project will be successful—that it will go from fearing for its players' safety in competition against its district opponents to being the best team in its district and one of the two best in its entire class. Such a remarkable turnaround may be earnestly hoped for, but it is not reasonable to expect. Put simply, "[t]he remote possibility" that all of these contingencies will occur "is not enough to overcome mootness." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001); *see also Murphy*, 455 U.S. at 482 ("The Court has never held that a mere physical or theoretical possibility was sufficient . . . .").

### 3. CCS's continued participation in other FHSAA sports does not avoid mootness.

CCS's argument that its claims for prospective relief are not moot because it continues to participate in other FHSAA sports also fails for multiple reasons.

First, the only injury CCS alleged was denial of pre-game access to the PA system at a *football* game. (*See generally* Doc. 8.) Any prospective relief would have to be narrowly tailored to remedy that injury. *See, e.g.*, *Garrido v. Dudek*, 731 F.3d 1152, 1159 (11th Cir. 2013) ("It is axiomatic that injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." (internal brackets and quotation marks omitted)). Appropriately, the injunctive relief CCS sought in its Complaint referred specifically the FHSAA's "policy for use of *the*

*Stadium*[7] *loudspeaker*," not use of a PA system at any other venue (assuming the other venues, such as cross country fields, golf courses, tennis facilities, etc., even have PA systems). (*See* Doc. 8 at 14, 16–17, 18, 20, 22, 23 (emphasis added).) CCS cannot turn to overbroad injunctive relief to manufacture a live controversy.

Second, even if the scope of the case were expanded, the evidence of a certainly impending future injury is no better for other sports than it is for football. In fact, the record provides even less basis to speculate that CCS will imminently make it to a championship final in another sport than it does for football. While the record shows CCS played in a Football Final once in 2015, CCS cites no record evidence of it playing a championship final in another sport. Substituting speculation about CCS making it to another Football Final with speculation about CCS making it to a championship final in another sport about which the Court knows even less therefore does nothing to salvage CCS's prospective claims. Whatever the sport, there is no rule that says every team will eventually reach a championship game. Some teams have competed for more than a century without playing for a championship. A future injury contingent on a player or team making it to a championship game is therefore inherently speculative and not an appropriate basis for injunctive relief.

---

[7] CCS defined the "Stadium" as "Camping World Stadium . . . in Orlando, Florida." (Doc. 8 at 1, ¶ 2.)

Even if CCS did make it to a non-football championship final, it isn't clear that the FHSAA would make the same decision on a request to use the PA system at that event as it did for CCS's request in 2015. This is clearly true following the enactment of Section 1006.185 (which applies to all sports) but was also true before. Contrary to CCS's assertion, the rationale for denying CCS's request in 2015 would not apply equally to all sports. Some sports may not take place at a "public facility," for example, which CCS admits was a factor Dr. Dearing cited in 2015. (Appeal Doc. 89-1 at 14.) Dr. Dearing also made clear—in a portion of his statement CCS repeatedly omits—that his view was that granting CCS access to the PA system was "not legally permitted *under the circumstances*[ ] *which were requested by Mr. Euler*." (Doc. 136-23 at PageID 6043 (emphasis added).) The circumstances of a future request could differ in numerous ways, particularly if they involve a different sport. CCS's own briefing pores over countless details it contends show the FHSAA's decision was improper that wouldn't apply to other sports, such as on-field banners and stenciled logos, team entrance rituals, cheerleaders on the sidelines, ads on stadium video and ribbon boards, halftime performances, and historical use of the PA system at football championship finals, among many others. (Blue Br. at 9–11, 16, 23, 28, 29.) It would be unreasonable to judge the FHSAA's decision through a careful, fact-specific analysis of all of these facts and circumstances but then ignore those facts and circumstances when speculating about how the FHSAA would respond to

a request in a different context.[8] Because the facts and circumstances of a hypothetical future request for access to the PA system at an event in another sport are unknown, the Court could only speculate about how the FHSAA would respond.

And, even if CCS made it to a non-football championship final, and the venue for the final had a PA system, and the FHSAA denied CCS access to that PA system, it's not even clear that this would cause the injury CCS alleged. CCS's alleged injury was specific to football in key respects. For example, CCS pointed to particular features of football stadiums that allegedly make it impossible to pray communally without using a PA system: "At football games in particular, because of the size of the fields, the venue being outdoors, and the noise generated by those in attendance, [CCS] cannot engage in a community prayer without the use of a loudspeaker." (Doc. 8 at 5, ¶ 19; *see also, e.g.*, Doc. 142-7 at 9, ¶ 30 ("Given the size of the stadiums in which the [CCS] football team plays, amplification through the public-address system is required to facilitate this communal prayer.").) No similar evidence exists for other sports. In fact, we know CCS's cheerleading squads did not need a PA system for their pre-game prayers. (*See, e.g.*, Doc. 136-6 at 32–33 [32:21–

---

[8] Notably, the case that most heavily influenced Dr. Dearing's decision, *Santa Fe Independent School District v. Doe*, specifically emphasizes that "[e]very government practice must be judged in its unique circumstances." 530 U.S. 290, 315 (2000) (internal quotation marks omitted). It would be unreasonable to assume that, in attempting to follow *Santa Fe*, Dr. Dearing purported to announce on the FHSAA's behalf a blanket rule that would apply to every future request in every sport.

33:7].) Thus, on top of all the other needed speculation, finding a future injury based on a non-football event would require the Court to assume—without evidence—that communal prayer would be impossible without a PA system at a tennis meet or a bowling match, etc., and that no alternative methods (e.g., a bullhorn) would suffice.

For these reasons, CCS's attempt to expand the case to cover other sports only multiplies the speculation it needs the Court to indulge to find a live controversy and does nothing to solve its problems with either mootness or standing.

### B. Nominal Damages

As for nominal damages, the FHSAA agrees that CCS's withdrawal from FHSAA football would not moot a retrospective claim for nominal damages arising from an alleged violation in 2015 if one existed. The FHSAA maintains, however, that CCS waived and forfeited any such claim because CCS first raised the possibility of nominal damages on appeal after being confronted with its lack of standing. *See Oliver v. Falla*, 258 F.3d 1277, 1281 (11th Cir. 2001) ("[A] request for nominal damages is *not automatic* . . . . *The plaintiff must seek such damages*, and if he fails to do so, he waives entitlement to such damages." (emphasis added)); *Berene v. Nationstar Mortgage, LLC*, 800 F. App'x 756, 760–61 (11th Cir. 2020) (unpublished) ("The . . . claim for nominal damages . . . comes too late, as the [appellants] did not raise entitlement to such damages with the district court."). If, as this Court has held, "a claim for nominal damages can be waived[ ] just like any other damages claim,"

CCS's failure to seek such damages below should result in waiver here. *Berene*, 800 F. App'x at 761 n.5. Nor would this case be the first in which a decision not to request nominal damages proves consequential in analyzing standing. *See, e.g.*, *Murthy v. Missouri*, No. 23-411, 2024 WL 3165801, at *8 (U.S. June 26, 2024).

Importantly, CCS cannot claim it had a request for nominal damages that was encompassed within a demand for actual damages because CCS also forfeited and waived any claim for actual damages. It did so by (a) failing to disclose any computation of actual damages in its initial disclosures (*see* Appeal Doc. 72-1 at 9 n.7), (b) failing to identify any evidence of actual damages in its summary-judgment papers (*see generally* Doc. 137; Doc. 151; Doc. 153), and (c) stating "[n]either party claims monetary damages[9] in this action" in the parties' pre-trial statement. (Appeal Doc. 72-2 at 15). This is therefore not a case in which CCS was attempting to prove

---

[9] Nominal damages are a category of "monetary damages." *See, e.g.*, *Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) ("[The] monetary award, if any, will be limited to a grant of nominal damages . . . ."). *Monetary* means "of or relating to money," Merriam-Webster's Collegiate Dictionary at 801 (11th ed. 2020), and nominal damages are "a nominal sum of *money*," *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986) (emphasis added and internal quotation marks omitted). Thus, by stating that no party claimed "monetary damages," CCS informed the district court—*accurately*—that it was not seeking nominal damages (or, indeed, any other kind of damages since all damages are, by definition, monetary). *See Damages*, Black's Law Dictionary (11th ed. 2019) ("*Money* . . . ." (emphasis added)).

Regardless of the circumstances under which this statement would operate as a binding stipulation, it was, at the very least, an accurate statement of fact that CCS's counsel cannot persuasively contradict merely because it is now convenient to do so.

actual damages and, having failed to do so, could fall back on a lesser-included, implicit request for nominal damages. Rather, this is a case in which CCS knowingly and intentionally waived, forfeited, abandoned, and/or disclaimed all forms of damages at every stage of the proceedings between the filing of its Complaint and its response to this Court's inquiry about standing on appeal (i.e., when CCS first realized it needed a retrospective claim to keep the lawsuit alive). CCS admitted as much in a filing below, and there is no reason this Court should discredit that admission and believe CCS's self-serving and untimely about-face on appeal.[10] (*See id.*)

For these reasons, while CCS's withdrawal from FHSAA football would not have mooted a claim for nominal damages that actually existed, the FHSAA maintains that CCS does not have such a claim and that the entire case is therefore moot.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Daniel Mahfood

---

[10] Disclosure that a claim is solely for nominal damages is important because, when a plaintiff is seeking only nominal damages, the defendant can "accept the entry of a judgment for nominal damages against it and thereby end the litigation without a resolution of the merits." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (Kavanaugh, J., concurring); *see also id.* at 808 (Roberts, C.J., dissenting) ("Where a plaintiff asks only for a dollar, the defendant should be able to end the case by giving him a dollar . . . ."). Allowing CCS to undo its choice not to request nominal damages at the last hour (and potentially recover hundreds of thousands in attorney's fees on the basis of this belated request for a trifling sum) would therefore severely prejudice the FHSAA.